IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2009 JUN -5 PM 1:51
LORETTA G. WHYTE
CLERK

| | |
|---|---|
| PATRICK SCARKINO and, DEBBIE BERGERON<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION, COMCAST HOLDINGS CORPORATION, COMCAST CABLE COMMUNICATIONS, INC., and COMCAST CABLE COMMUNICATIONS HOLDINGS, INC.,<br><br>Defendants. | Judge:_____<br><br>Case No.: 09-3785<br><br>SECT. J  MAG. 2<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiffs Patrick Scarkino and Debbie Bergeron (hereinafter "Plaintiffs") individually and as representatives of a Class of similarly situated individuals, bring this Complaint against Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, Inc., and Comcast Cable Communications Holdings, Inc., (hereinafter "Defendants" or "Comcast") and allege the following:

### INTRODUCTION

1. This is a class action brought on behalf of all persons who purchase premium cable services from Defendants in the United States. Defendants' premium cable customers have no choice but to pay a rental fee for a "cable box" in order to view the cable television for which they pay a separate fee. Defendants' actions constitute an unlawful tying arrangement resulting in an impermissible restraint of trade in violation of federal law.

2. Defendants' activities have and will continue to threaten to have adverse,

1

competitive effects on interstate commerce and on commerce within the United States.

3. Plaintiffs are citizens of the State of Louisiana and reside in LaPlace, Louisiana, Parish of St. John the Baptist.

4. At all times relevant hereto, Plaintiffs have been subscribers to premium cable services provided by Defendants.

5. Plaintiffs bring this action on their own behalf and on behalf of the following class of persons:

> All persons in the United States who subscribed to Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, Inc. or Comcast Cable Communications Holdings, Inc., for premium cable television services and paid a monthly rental fee for an accompanying cable box ("the Class").

Excluded from the Class are the Defendants; officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs or assigns of Defendants; and any federal, state or local governmental entity, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs. Plaintiffs reserve the right to modify or amend this Class definition if discovery and/or further investigation so necessitate.

6. Defendant, Comcast Corporation is a publicly held Pennsylvania corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania.

7. Defendant, Comcast Holdings Corporation is a Pennsylvania corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Holdings Corporation was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

8. Defendant, Comcast Cable Communications, Inc., is a Delaware corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Cable Communications, Inc. was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

9. Defendant, Comcast Cable Communications Holdings, Inc., is a Delaware corporation with its principle place of business located at One Comcast Center, Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Cable Communications Holdings, Inc. was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

10. At all times relevant hereto, each of the Defendants acted as the agent of each of the other Defendants.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§§ 1331 and 1337 in that Plaintiffs on their own behalf and on behalf of the Class, assert claims under the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2.

12. Venue is proper in the Eastern District of Louisiana 28.U.S.C. §§ 1391 and 15 U.S.C. § 22.

## FACTUAL BACKGROUND COMMON TO ALL CLASS MEMBERS

13. Comcast is the largest provider of cable services in the United States, and one of the world's leading communications companies. As of September 30, 2008, Comcast provided cable television services to 24.4 million customers in thirty-nine states and the District of Columbia.

14. In the nine months ending September 30, 2008, Comcast's cable television

services generated $24.15 billion in revenue.

15. Customers subscribe to Comcast for cable services and pay a monthly fee based on the level of service provided. Plaintiffs and the Class are Comcast customers who have elected to receive "premium" services including, but not limited to, high definition ("HD") television services, digital cable services, digital On-Demand services, digital video recorder ("DVR") services, and premium movie channels such as HBO, Showtime or Cinemax.

16. Customers such as Plaintiffs and the Class pay a higher monthly fee for cable services than customers who elect to receive only "basic" or "standard" cable television services.

17. In addition to paying a higher monthly fee for premium cable television service, Plaintiffs and the Class are also required to pay a monthly rental fee to Comcast for a cable box. The cable box consists of a converter box and cable descrambler. The cable box is required in order for Plaintiffs and the Class to use the premium services for which they pay a higher monthly fee. In other words, the premium channels can only be viewed by, and premium services can only be used by, Comcast customers who also have a Comcast cable box.

18. Comcast requires Plaintiffs and the Class to rent a cable box directly from Comcast and not from any other source, even though cable boxes, which would readily permit Plaintiffs and the Class to view the Comcast premium channels and use the Comcast premium services, are available on the open market. Thus, Comcast ties its premium cable services to the cable box which it requires Plaintiffs and the Class to rent. Importantly, the premium cable services and the cable box are separate and distinct products.

19. Although cable boxes are manufactured by many different companies, Motorola and Scientific Atlanta dominate the market and sell their cable boxes to various cable companies including Comcast. If not for the tying of the premium cable services to the cable box, Plaintiffs

and the Class could purchase, or rent, a cable box from the manufacturer or provider of their choice and use that box to view premium channels or use premium services provided by Comcast.

20. The choice to use other cable boxes is not available to Plaintiffs or the Class because of Comcast's practice of tying the premium cable services to the cable boxes. In addition, Comcast refuses to sell the cable boxes to its customers thereby forcing customers to pay monthly rental fees which eventually, within a number of months, exceed the value of the cable box. Thus, by tying the premium services to the cable box, Comcast forces Plaintiffs and the Class to pay a significantly greater sum for cable television than would be required if the two products remained distinct.

21. Plaintiffs believe Comcast purchases cable boxes from manufacturers, such as Motorola and Scientific Atlanta, at a fixed and relatively low cost only to turn around and rent those boxes to Class, with full knowledge that the Class, because of Comcast's improper conduct, has no choice but to pay the rental fees charged by Comcast. Plaintiffs believes the cable box market involves a significant amount of interstate commerce.

## CLASS ACTION ALLEGATIONS

22. <u>Class Definition</u>: Pursuant to Fed.R.Civ.P. 23(b)(1), (2) and (3), Plaintiffs bring this action on behalf of himself and all others similarly situated, as members of the proposed Plaintiff Class. The proposed Plaintiff Class is defined as follows:

> All persons in the United States who subscribed to Comcast Corporation, Comcast Holdings Corporation, Comcast Cable Communications, Inc. or Comcast Cable Communications Holdings, Inc., for premium cable television services and paid a monthly rental fee for an accompanying cable box.

23. <u>Numerosity</u>: The members of the Class are so numerous that their individual joinder would be impracticable in that: (a) the Class includes millions of individual members; (b) the precise number of Class members and their identities are unknown to Plaintiffs but are well known to Comcast and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the millions of individual Class members to be individually represented in separate actions; and (d) the relatively small amount of damages suffered by some of the Class members does not make it economically feasible for those Class members to file an individual action to protect their rights.

24. <u>Commonality/Predominance</u>: Common questions of law and fact predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Comcast is liable to Plaintiffs and the Class for violations of federal antitrust laws;

    b. Whether Comcast has established an unlawful tying arrangement for the rental of cable boxes, in violation of federal laws;

    c. Whether Comcast's actions have caused damages to Plaintiffs and the Class;

    d. Whether Comcast should be enjoined from further violations of the federal laws;

    e. Whether Comcast is liable to the Plaintiffs and the Class for treble damages as a result of its violation of federal antitrust laws;

25. <u>Typicality</u>: Plaintiffs are typical of the claims of the Class members. Plaintiffs and all Class members have been injured by the same wrongful practices engaged in by Comcast.

Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

26. <u>Adequacy:</u> Plaintiffs will fully and adequately assert and protect the interests of the Class. Plaintiffs retained counsel who is experienced in class actions and complex mass tort litigation. Neither Plaintiffs nor their counsel have interests contrary to or conflicting with the interests of the Class.

27. <u>Superiority:</u> A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the class is in the millions of dollars, the individual damages suffered by each of the Class members as a result of the wrongful conduct by Comcast are too small to warrant the expense of individual lawsuits. Even if the individual damages were sufficient to warrant individual lawsuits, the court system would be unreasonably burdened by the number of cases that would be filed.

28. Plaintiffs do not anticipate any difficulties in the management of this litigation.

### COUNT I
### VIOLATION OF THE SHERMAN ANTITRUST ACT
### UNLAWFUL TYING

29. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein at length.

30. The Sherman Antitrust Act makes it unlawful to enter into a contract in restraint of trade or commerce. 15 U.S.C. § 1. Congress has granted a private right of action to individuals harmed by violations of this Act. 15 U.S.C § 15.

31. Plaintiffs, on their own behalf and on behalf of the Class, seeks to recover damages they suffered as a result of Comcast's violation of the Sherman Antitrust Act.

32. Comcast improperly ties and bundles its premium cable services with the required rental of a cable box. Specifically, Comcast contracted with Plaintiffs and all Class members, to provide premium cable services but only on the condition that Plaintiffs and all Class members, also pay a monthly rental fee to Comcast for a cable box necessary to view and use the premium services.

33. No member of the Class, including Plaintiffs can unbundle or untie the two products, i.e., premium cable services and the cable box.

34. As a result, Plaintiffs and the Class are forced to pay rental fees for the cable box in addition to the increased fees they pay for premium cable services. Comcast's conduct is even more egregious given that Comcast is one of the largest providers of cable services in the United States. In fact, in many areas of the country, it is believed that Comcast is the sole provider of cable services.

35. At all times relevant hereto, Comcast has maintained, and exerted sufficient economic and market power to coerce Plaintiffs and the Class to pay rent for the cable box and accept the tied products.

36. Comcast's improper tying of the cable box to the premium cable service harms competition. Upon information and belief, the cable box market is dominated by two manufacturers, both of which sell products to Comcast. Since Plaintiffs and the Class can only rent a cable box directly from Comcast, there is little incentive for other manufacturers to enter the market, and those that do are precluded from renting or selling their products to Plaintiffs and the Class at lower, market-driven prices.

37. There is a market for cable boxes separate and apart from the Comcast premium cable services; the two products are separate and distinct products. In fact, an individual can find cable boxes for sale on the open market today, but Comcast refuses to permit a customer to use his own cable box when subscribing to Comcast's premium services.

38. At all times relevant hereto, Comcast has maintained sufficient power in the cable market to force Plaintiffs and the Class to accept the rental arrangement which they otherwise would not accept absent Comcast's extraordinary economic and market power.

39. Comcast's conduct has a substantial impact on interstate commerce in the market for cable boxes.

40. Comcast's bundling and tying of premium cable services and the cable box is an unreasonable restraint of trade in violation of the Sherman Antitrust Act.

41. Comcast's conduct has been, and continues to be, the direct cause of damage to the Plaintiffs and the Class.

42. There is no lawful business justification for Comcast's conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, demand judgment in their favor and against Defendants as follows:

a. For an Order certifying the Class pursuant to Fed.R.Civ.P. 23 appointing Plaintiffs as the representative of the Class, and appointing counsel for Plaintiffs counsel for the Class;

b. For an Order that Comcast violated the Sherman Antitrust Act, 15 U.S.C. § 1;

c. For an Order enjoining Comcast from continuing the practice of tying premium

cable services to the rental of a cable box from Comcast;

d. For an award of all compensatory and other damages suffered by Plaintiffs and the Class;

e. For an award of all statutory damages under both the Sherman Antitrust Law;

f. For an award of all costs incurred by Plaintiffs in pursuing this action;

g. For an award of reasonable attorneys' fees; and

h. For any other relief the Court deems reasonable.

## JURY DEMAND

Plaintiffs demand a trial by jury of all factual issues.

Dated: June 5, 2009                Respectfully submitted,

_____
Daniel E. Becnel, Jr. (2926)
Matthew B. Moreland (24567)
**BECNEL LAW FIRM**
P.O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com
mmoreland@becnellaw.com
nlglawfirm@bellsouth.net